878 P.2d 782

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lino GOMEZ, Defendant–Appellant.**

**No. 20254.**

Supreme Court of Idaho,
Coeur d'Alene, 1994 Term.

July 11, 1994.

---

Frederick G. Loats, Coeur d'Alene, for appellant.

Larry EchoHawk, Idaho Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for respondent. Lynn E. Thomas argued.

TROUT, Justice.

This is an appeal from a conviction and sentence for attempted first degree murder. Appellant, Lino Gomez (Gomez), challenges the constitutionality of I.C. § 18–207, which repealed the insanity defense; failure of the trial court to give jury instructions on the effect on intent of his alleged mental illness; refusal by the trial court to consider his ineffective assistance of counsel claim in a new trial motion; and the length of his sentence. We affirm.

## BACKGROUND

Gomez was charged with attempted first-degree murder for the July 27, 1991 shooting of his estranged wife. He was tried to a jury and convicted. The trial court denied Gomez' motion for a new trial and thereafter sentenced him to a fixed term of seven years followed by an indeterminate term of eight years. A Rule 35 motion based on a plea for leniency was also denied.

At trial, Gomez had sought to establish that he did not intend to kill his wife. He testified on his own behalf that he was "out of my mind" at the time of the shooting. and did not intend to shoot or kill his wife. Gomez also presented expert testimony of a

psychiatrist, Dr. Cutting, that he was suicidal and having homicidal thoughts as early as March of 1991; that he was extremely agitated and depressed; and that his actions were not the product of careful thought and consideration. Dr. Cutting testified that he had hospitalized Gomez in April of 1991 and had prescribed Xanax, a tranquilizer. Dr. Cutting testified that Gomez' agitation and depression were "exacerbated" by his wife's filing for divorce and obtaining a restraining order against him. Dr. Cutting testified that he did not believe that Gomez would "be able to calmly form th[e] intent [to kill his wife]" and that he "didn't reflect, he couldn't be made to reflect[ ]" about his actions.

There was also testimony from Gomez that he had considered killing his wife prior to shooting her; that he had purchased a gun at a pawn shop the day before the shooting; and that he went to her house on July 27, 1991 in violation of a restraining order, and when she said she would call the sheriff he shot her. Further, Dr. Cutting testified that Gomez ran a complex business, knew that shooting his wife was wrong and that the acts in preparation for the offense illustrated rational and reflective thought.

## DISCUSSION

### I.

### REPEAL OF THE INSANITY DEFENSE

■ Gomez' first argument on appeal is that I.C. § 18–207, eliminating mental condition as a defense in criminal proceedings, should be found unconstitutional. The validity of I.C. § 18–207 has been established in Idaho case law. *State v. Odiaga*, 125 Idaho 384, 871 P.2d 801 (1994) (citing *State v. Winn*, 121 Idaho 850, 854, 828 P.2d 879, 883 (1992)); *State v. Card*, 121 Idaho 425, 429, 825 P.2d 1081, 1085, *cert. denied*, —— U.S. ——, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *State v. Searcy*, 118 Idaho 632, 637, 798 P.2d 914, 919 (1990).

Gomez presents no new basis upon which to consider the constitutionality of I.C. § 18–207 but argues that the Court should reconsider its prior rulings on the subject. Having previously decided this question, and being presented with no new basis upon which to consider the issue, we are guided by the principle of *stare decisis* to adhere to the law as expressed in our earlier opinions.

### II.

### JURY INSTRUCTIONS

Appellant argues that even without an insanity defense, the law in Idaho, specifically I.C. §§ 18–114 and –115, requires a criminal defendant to be responsible for his actions. He contends that the trial court erred in failing to instruct the jury on his insanity theory so the jury could determine whether or not appellant was insane and thus not responsible for his actions.

■ Appellant did not request any jury instruction on this issue.[1] A defendant may not challenge on appeal the failure to give a jury instruction which was never requested, absent fundamental error. *See State v. Eastman*, 122 Idaho 87, 831 P.2d 555 (1992) (it is incumbent on defendant to submit a requested instruction; the trial court is not obligated to instruct the jury *sua sponte* on the defendant's theory of the case and there was no error where the court failed to give an instruction on the defense of necessity where defendant failed to ask for such instruction). *See also State v. Kluss*, 125 Idaho 14, 867 P.2d 247 (Ct.App.1993) (failure to give jury instructions on lesser included offenses was considered on appeal only because defendant alleged fundamental error since instruction was not requested by defendant at trial). Fundamental error is error "which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process." *State v. Mauro*, 121 Idaho 178, 824 P.2d 109 (1991).

---

1. Appellant complains that the only instruction given on his intent involved intoxication and that no instruction was given to the jury to assess the psychiatrist's testimony or defendant's own testimony on intent. The instruction regarding intox- ication was *requested* by defendant and given.

86

■ We note as an initial matter that appellant does not claim that the failure to give the described jury instruction constituted fundamental error.[2] Further, our review of the jury instructions given by the trial court convinces us that there was no fundamental error depriving Gomez of his due process rights. The trial court clearly and adequately instructed the jury on the State's obligation to prove beyond a reasonable doubt the elements of the crime charged and lesser included offenses, including the level of intent required to commit murder. The jury heard the testimony of Gomez' psychiatrist and could have considered it in determining if the State had met its burden to prove intent. The jury obviously found that the State had met its burden.

### III.

### INEFFECTIVE ASSISTANCE OF COUNSEL AS A BASIS FOR A NEW TRIAL

Appellant argues that the trial court erred in refusing to consider his new trial motion which was based on an allegation of ineffective assistance of counsel, citing *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975). The trial court noted that the ineffective assistance of counsel allegation was better addressed in a post-conviction proceeding and denied the new trial motion because, *inter alia*, it was not the proper vehicle for an ineffective assistance of counsel claim. We find no error in the trial court's actions.

■ Idaho Code § 19–2406 sets forth the only bases for the grant of a new trial. Ineffective assistance of counsel is not included in that list. Thus, as previously noted by this Court, while a decision of whether to grant a new trial is a discretionary matter for the trial judge, I.C. § 19–2406 limits the instances in which that discretion may be exercised. *State v. Lankford*, 116 Idaho 860, 873, 781 P.2d 197, 210 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3295, 111 L.Ed.2d

803 (1990). Only those grounds provided statutorily can support the grant of a new trial. *State v. Laws*, 94 Idaho 200, 485 P.2d 144 (1971); *State v. Weise*, 75 Idaho 404, 273 P.2d 97 (1954); *State v. Davis*, 6 Idaho 159, 53 P. 678 (1898). Further, in *Lankford*, we held that "a trial judge does not abuse his or her discretion unless a new trial is granted for a reason that is not delineated in the code or unless the decision to grant or deny a new trial is manifestly contrary to the interests of justice." 116 Idaho at 873, 781 P.2d at 210.

■ We recognize that *Tucker* could be read to support appellant's argument that an ineffective assistance of counsel claim can be the basis for a grant of a new trial. In *Tucker*, the Court remanded the case to the trial court for further proceedings to determine whether a new trial should be granted on the ground of inadequacy of counsel. *Id.* at 12 and n. 9, 539 P.2d at 564 and n. 9. However, *Tucker* came to this Court on appeal not only from the denial of the motion for a new trial, but also from the dismissal of a petition for post-conviction relief, and it is not clear from the opinion that the ineffective assistance of counsel argument was specifically raised in the new trial motion. From the Court's holding, it might appear that Tucker asserted ineffective assistance of counsel in both the motion for new trial and the post-conviction petition. However, in footnote 9 the Court noted: "[T]he record before us does not indicate whether the issue of assistance of counsel was argued on the motion for a new trial." *Id.* at 12, 539 P.2d at 564. In any event, the Court was not directly presented in *Tucker* with a challenge to the use of a new trial motion to question the assistance of counsel. To the extent that *Tucker* may be read to permit such a challenge in a motion for new trial, it stands squarely in the face of statutory and abundant case law indicating that ineffective assistance of counsel is *not* grounds for a new trial. As did the trial court in this case, we consider the holding therein to be unpersuasive. The trial court did not abuse its discre-

---

2. We further note that this factual scenario is distinguishable from the situation in which the Court has held that a defendant does not waive the right to object to a jury instruction by the failure to object to that instruction at trial. *State*

*v. Smith*, 117 Idaho 225, 786 P.2d 1127 (1990). *Smith* does not stand for the proposition that a defendant can fail to request a jury instruction and later allege error in the failure to give it.

tion in refusing to consider the ineffective assistance of counsel allegation as a basis for new trial and in denying the new trial motion on that basis.

## IV.

## REASONABLENESS OF THE SENTENCE

Appellant argues that the sentence imposed on him is excessive because it fails to take into account the other circumstances of his life which, excluding this event, have been extraordinary, as well as his age and the devastating impact this sentence has had on him. We disagree.

■ This Court reviews a criminal sentence for reasonableness, under which standard the imposition of an unreasonable sentence is an abuse of discretion. *State v. Odiaga*, 125 Idaho 384, 871 P.2d 801 (1994) (citations omitted); *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *State v. Broadhead*, 120 Idaho 141, 143, 814 P.2d 401, 403 (1991), *rev'd on other grounds*. If the sentence is not illegal, the defendant has the burden to show that it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 392–93, 825 P.2d 482, 489–90 (1992); *State v. Broadhead*, 120 Idaho 141, 144–45, 814 P.2d 401, 404–05 (1991). The question is whether the sentence is unreasonable upon all of the facts of the case. The defendant must show that in light of the governing criteria, the sentence was excessive under any reasonable view of the facts. *Brown*, 121 Idaho at 393, 825 P.2d at 490; *Broadhead*, 120 Idaho at 143–45, 814 P.2d at 403–05.

■ For purposes of appellate review, it is the fixed portion of the sentence that is the term of confinement to be reviewed, in this case seven years. *Broadhead*, 120 Idaho at 146, 814 P.2d at 406. The Court has stated that the standard for judging reasonableness implies that a term of confinement should be tailored to the purposes for which the sentence is imposed. A term is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence,

rehabilitation or retribution applicable to a given case. A sentence longer than necessary for these purposes is unreasonable. *Broadhead*, 120 Idaho at 145, 814 P.2d at 406 (citation omitted).

■ The trial court in sentencing Gomez, specifically found an undue risk that Gomez would commit another crime against his ex-wife since he had not overcome his obsession with her. The court further found that correctional treatment would be most effectively provided in an institutional setting and that a lesser sentence would depreciate the seriousness of the crime. In addition, the court considered the other goals of punishment and found that deterrence would not be served by a lesser sentence and that retribution required a fairly severe sentence. The court noted that Gomez had no serious prior criminal record and that his potential victims were not the general public. The court further noted in imposing sentence on Gomez that it was taking into account his mental state at the time of the crime.

The fixed sentence of seven years imposed on Gomez was within the authorized statutory limits for attempted first-degree murder. I.C. § 18–4004, 18–306(1). Having reviewed the evidence presented, focusing on the nature of the offense and character of the offender, we find that the trial court did not abuse its discretion in imposing a seven-year fixed term.

Gomez bought a gun the day before the shooting. He violated a restraining order and went to his wife's home. He shot all six bullets from it at his wife, two to four of which hit her. As noted by the trial court, it was "purely miraculous" that she was not killed. Although Gomez had no previous criminal involvement, and may not have posed a threat to the general public, given the sentencing goals of protecting society along with deterrence, rehabilitation and retribution, a seven-year fixed sentence is not longer than necessary to achieve these goals and was not unreasonable at the time imposed. Gomez has failed to show that the sentence was excessive under any reasonable view of the facts. *Broadhead*, 120 Idaho at 145, 814 P.2d at 405.

## CONCLUSION

Appellant's conviction and sentence are affirmed.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.